## IN THE UNITED STATES DISTRCT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **KW-TUSCALOOSA HOTEL** ) | |
| **PARTNERS, LLC** ) | |
| ) | |
|     **Plaintiff,** ) | **CIVIL ACTION NUMBER:** |
| ) | **7:22-cv-00005-GMB** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **UPONOR INC.;** ) | |
| **UPONOR NORTH AMERICA;** ) | |
| ) | |
|     **Defendants.** ) | |

---

## FIRST AMENDED COMPLAINT
---

### I. INTRODUCTION

1. This case is for damages and other relief on behalf of Plaintiff related to white cross-linked polyethylene tubing ("PEX") manufactured and/or distributed by Defendants Uponor, Inc. and Uponor North America, Inc. (collectively "UPONOR" or "Defendants") which suffers from design and/or manufacturing defects that cause premature damage, degradation, deterioration and failure (hereinafter "UPONOR PEX").

### II. PARTIES

2. Plaintiff KW-Tuscaloosa Hotel Partners, LLC ("KW-Tuscaloosa") is a domestic Limited Liability Company licensed to do business is Tuscaloosa County, Alabama at all times material hereto. KW-Tuscaloosa was incorporated under the laws of the State of Alabama, with its registered office located at 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104. KW-Tuscaloosa is a "citizen" of Alabama for diversity jurisdiction purposes because it is incorporated in Alabama. 28 U.S.C. § 1332(c)(1).

3. Defendant Uponor, Inc. is a foreign corporation, incorporated under the laws of the State of Illinois, with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124.  Uponor, Inc. is a "citizen" of the state of Illinois *and* the state of Minnesota, for diversity jurisdiction purposes, because "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332 (c)(1).

4. Defendant Uponor North America, Inc. is a foreign corporation, incorporated under the laws of the State of Delaware, with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124. Uponor North America, Inc. is a "citizen" of the state of Delaware *and* the state of Minnesota, for diversity jurisdiction purposes, because "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332 (c)(1).

5. At all relevant times herein, Defendants Uponor, Inc. and Uponor North America, Inc. designed, manufactured, marketed/advertised, sold and/or distributed UPONOR PEX for use in commercial water plumbing systems throughout the United States, both directly and indirectly, by and through their entities, employees, agents, predecessors-in-interest and/or other representatives.

### III. JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this action pursuant to 28 U.S. Code § 1332 because the citizenship of Plaintiff and Defendants is diverse and the amount in controversy exceeds $75,000.00.

  a. Plaintiff KW-Tuscaloosa is a domestic company incorporated in the State of Alabama. [*See supra* ¶ 2.]

  b. Defendant Uponor, Inc. is incorporated under the laws of the State of Illinois and has its principal place of business in the State of Minnesota. [*See supra* ¶ 3.]

  c. Defendant Uponor North America, Inc. is incorporated under the laws of the State of Delaware and has its principal place of business in the State of Minnesota. [*See supra* ¶ 4.]

  d. KW-Tuscaloosa was neither incorporated, nor does it have its principal place of business, in any of the states for which Uponor, Inc. and Uponor North America, Inc. are deemed "citizens" for diversity purposes.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Northern District of Alabama.

## IV. NATURE OF THE CASE

8. Defendants Uponor, Inc. and Uponor North America, Inc. (collectively "UPONOR") is a recognized leading provider of pipe, fittings, and flow control products for commercial, industrial and institutional applications as well as the residential and commercial markets.

9. UPONOR manufactures, warrants, markets and sells a line of cross-linked polyethylene ("PEX") plumbing tubes ("PEX Tubing"), bronze, brass and polyphenylsulfone fittings which connect the PEX Tubing ("PEX Fittings"), stainless steel, copper and polybutylene crimps and clamps which join the PEX Tubing and PEX Fittings ("PEX Clamps") (collectively, "PEX Products") for use throughout the United States.

10. This lawsuit arises out of damages sustained by Plaintiff that were proximately caused by UPONOR's PEX Products, which were used throughout Plaintiff's hotel.

11. UPONOR warrants that its PEX Tubing will be free from any defects in materials and workmanship for a period ranging from ten (10) years to twenty-five (25) years, dependent upon whether the entire plumbing system was composed of solely of UPONOR products, or instead, UPONOR components installed in conjunction with other manufacturers' PEX products. The industry and consumers appropriately rely on the marketing language to mean a product with a 10-year, or 25-year warranty is expected to have a usable lifetime of at least 10 years or 25 years, respectively.

12. Defendants have repeatedly represented that consumers should trust Defendants to provide the highest quality PEX tubing because the company has many years of industry experience and is an industry leader in the manufacture of PEX tubing.

13. Defendants designed, manufactured, advertised/marketed, distributed, and/or sold the UPONOR PEX at issue. Defendants' sales catalog advertised that, inter alia, its UPONOR PEX was the highest quality PEX tubing available, and that its cross-chemical bonding process gave it "superior characteristics."

14. Despite UPONOR's representations regarding the high quality of its PEX Products, UPONOR knows and has known of the specific design, material and/or manufacturing defects alleged herein, that the PEX Products were not suitable for use within water-carrying plumbing systems and that there was a substantial risk that its PEX Products would prematurely degrade, fail and leak under normal conditions.

15. UPONOR has failed to disclose these risks to consumers, including Plaintiff.

16. As a result of the defects in UPONOR's PEX Products, Plaintiff has suffered and continues to suffer damages, including significant real and personal property damage caused by water leaks from degraded PEX Products. In addition, Plaintiff has suffered harm in the form of the loss of the benefit of the bargain, in that they paid for a product that was worth less than what was represented by UPONOR. Plaintiff would not have purchased the PEX Products, had it known of the defects at the time of sale. Furthermore, Plaintiff must remove, discard and replace the PEX Products sooner than reasonably expected, often with little or no warning. Said removal will cause Plaintiff to incur significant room revenue losses.

17. The degradation and failure of the PEX Products has also caused damage to the value of Plaintiff's real property in that the value of the Plaintiff's real property has been stigmatized and diminished as compared to real property which does not have the defective PEX Products. The Plaintiff will also suffer tremendous decrease in revenue resulting from the loss of use of its hotel during removal and/or replacement of the Uponor PEX Products.

18. Plaintiff seeks to recover all damages proximately caused by UPONOR's PEX Products, including all costs associated with repairing, removing and/or replacing their PEX Products, as well as the costs of repairing any damage to its real and personal property and loss of revenue caused by the failure of the PEX Products to perform as represented and warranted. Plaintiff also seeks injunctive relief requiring UPONOR to modify its unfair and fraudulent practices so as to uniformly provide relief in accordance with its obligations under the law.

## V. STATEMENT OF FACTS

19. Plaintiff is the owner of the Embassy Suites hotel located at 2410 University Boulevard, Tuscaloosa, Alabama 35401.

20. The hotel was substantially completed in 2015, and was originally constructed with UPONOR PEX Products throughout the potable water plumbing system. PEX stands for "cross-linked polyethylene." PEX is a popular product because of its purported flexibility, durability, chlorine resistance, and ease of installation. Specifically, all water piping 2" and smaller in diameter in the hotel is Uponor PEX-A tubing.

21. The Uponor Aqua PEX white piping installed in Plaintiff's hotel contains a 5106 material designation code – the classification for the highest chlorine resistance according to UPONOR.

22. The Uponor PEX in Plaintiff's hotel was installed correctly and in accordance with the manufacturer's guidelines. The hot water temperature for the Plaintiff's operating plumbing system has never exceeded 140 degrees Fahrenheit. [1]

23. Despite proper installation and temperature/pressure within recommended ranges at all times, the Uponor PEX in Plaintiffs' hotel is prematurely degrading, deteriorating and/or failing and suffers from micro-cracking. In many areas, the previously white PEX piping has also turned yellow in color.

24. Plaintiff discovered a leak in the PEX piping for the first time in the Spring of 2016. This 2016 leak was localized to only one area of the hotel and, at the time, did not alert Plaintiff that there was an issue with the pipe as a whole.

---

[1] The hot water temperature operating system is physically incapable of providing water temperatures over 140 degrees.



25. Over the course of the next several years; however, Plaintiff experienced numerous additional leaks in the PEX piping in different areas of the hot water side of the system.[2] All of the leaks discovered occurred from the PEX piping itself, not at joints or connections between individual pieces of PEX piping.

26. As a result of the leaks, Plaintiff submitted a warranty claim with UPONOR in November of 2017.

---

[2] Recently, Plaintiff has also experienced similar leaks on the cold-water side.

27. Having received no response from the first warranty claims, Dan Jones, the project engineer, contacted Defendant UPONOR to file a warranty claim regarding the problems they were experiencing for the second time in February of 2018. Part of this warranty claim included sending portions of the defective pipe to UPONOR.

28. UPONOR representatives informed Plaintiff via denial letter in February 2018 that the problems with the PEX was the result of the temperature for the hot water side of the plumbing system being set to 160 degrees Fahrenheit – outside the recommended operating temperature of 140 degrees Fahrenheit. Despite not actually performing any temperature readings itself, Uponor denied Plaintiff's warranty claim.

29. Plaintiff continued to experience leaks throughout the hotel in the hallways, kitchen and restaurant. In July of 2020, Plaintiff submitted a third warranty claim to UPONOR through a third-party manufacturers' firm, Pully & Associates.

30. Between October 12-13 of 2020, UPONOR sent field engineers to the hotel to analyze the pipe failures. Brad Barrett, senior field application engineer for Uponor's Southwest region, led the team. During the visit, UPONOR witnessed three (3) actual PEX pipe leaks in the hotel. Moreover, UPONOR conducted water temperature readings – none of which were over 120 degrees Fahrenheit. UPONOR also discovered during its investigation that the water temperature for the hotel could not exceed 140 degrees Fahrenheit. UPONOR took several samples of the pipe back to UPONOR's labs for testing.

31. Despite knowing that temperature in the hot water system was incapable of reaching temperatures outside the manufactures' guidelines, UPONOR denied Plaintiff's third warranty claim via letter on January 27, 2021. UPONOR's reasoning was the exact same as the previous denials, stating: "Based upon the information gathered during this evaluation, we have

determined that the failure of the product was a result of continuous exposure to temperatures exceeding the product limitations. The operating plumbing system temperature for the above-referenced address has been confirmed to have been set at 160°F. As outlined in chapter four of UPONOR's Plumbing Design Assistance Manual (PDAM), Uponor has set a max operating temperature of 140°F for hot-water return piping. "

32. Throughout February of 2021, Plaintiff repeatedly requested copies of UPONOR's PDAM and proof that the water temperature was operating at 160 degrees; however, UPONOR ignored Plaintiff and/or refused to provide it.

33. This finding by UPONOR—upon which it based its denial of Plaintiff's warranty claim—was false, as Plaintiff's plumbing system has **never**, during its entire operating history, been set at or higher than 140 degrees Fahrenheit. UPONOR personally inspected the hot water system during its visit and noted that it was operating at 120 degrees Fahrenheit. It was not until February of 2021, after receiving UPONOR's denial letter and refusing to substantiate that the hot water was operating at 160 degrees did Plaintiff know, or have reason to know, that UPONOR was fraudulently denying Plaintiff's warranty claim.

34. UPONOR's refusal to honor its warranty and properly investigate Plaintiff's claims was done maliciously, and with the intent to deceive Plaintiff. In fact, UPONOR has a pattern and practice of denying similar warranty claims by blaming consumers or installers for problems with its defective pipe.

35. Upon information and belief, the UPONOR PEX antioxidant formulation added during the manufacturing process fails to adequately protect the pipe from in-service degradation which ultimately results in the failure of the pipe wall causing microcracks in the wall of the pipe.. The embrittlement and microcracks constitute damage to the tubing and the cracks

continue to grow and spread over time, eventually propagating through-wall, causing resultant leaks, significant damage to other property, loss of use of the plumbing system, and/or preventing the plumbing system from functioning as intended.



36. Recent testing has revealed that the antioxidant formulation and density of the pipe materials are inconsistent, indicating that the production processes employed by UPONOR are inconsistent resulting in the production of pipe with wildly disparate performance characteristics.

37. Before designing, manufacturing, advertising/marketing, distributing and/or selling UPONOR PEX, Defendants failed to take appropriate steps to ensure that its products were safe for their intended use.

38. Defendants knew or should have known that UPONOR PEX was not suitable for use within water plumbing systems and that UPONOR PEX suffered from the defects and caused damages as alleged herein.

39. UPONOR PEX has caused damage to, and failure of, plumbing systems, which has caused and will continue to cause Plaintiff to incur damages through no fault of its own.

40. Plaintiff seeks relief for damages sustained by Plaintiff caused by the use of UPONOR PEX in Plaintiff's hotel.

41. Plaintiff has suffered an ascertainable loss as a result of Defendants' acts, omissions and/or misrepresentations associated with UPONOR PEX, including their misrepresentations and non-disclosures about the product defects.

42. At no time did Defendants or any of their agents, dealers or other representatives inform Plaintiff of Defendants' acts, omissions and/or misrepresentations related to defects in UPONOR PEX.

## VI. CAUSES OF ACTIONS

### COUNT ONE - FRAUDULENT MISREPRESENTATIONS AND/OR INNOCENT MISREPRESENTATIONS

43. Plaintiff realleges, as if fully set forth, each and every allegation contained in the preceding paragraphs, and further alleges that:

44. Defendants have repeatedly represented to consumers that they should trust Defendants to provide the highest quality PEX tubing because the company has many years of industry experience and its status as an industry leader in the manufacture of PEX tubing. Defendants designed, manufactured, advertised/marketed, distributed, and/or sold the UPONOR PEX at issue.

45. Defendants' sales catalog represented that, inter alia, its UPONOR PEX was the highest quality PEX tubing available, and that its cross-chemical bonding process gave it "superior characteristics." Defendants further represented that the UPONOR PEX products at issue were "versatile" and suitable for "Potable Hot- and Cold-water Distribution" and hot/cold water recirculation plumbing systems. Defendants further represented that their UPONOR PEX piping held a 5106 material designation code – the classification for the highest "chlorine resistance".

46. All of these representations were false.

47. Defendants intended for the above-described representations to induce Plaintiff and others to utilize their PEX Products.

48. Defendants intended for the above-described representations to induce Plaintiff to utilize UPONOR's PEX Products in its hotel's plumbing system.

49. Defendants' misrepresentations were made either willfully to deceive, recklessly without knowledge, or by mistake and innocently.

50. Plaintiff acted in reliance on Defendants' misrepresentations by agreeing to purchase the Uponor Pex Products, which it would not have done had it known the truth.

51. Plaintiff's reliance was reasonable and justified based on the knowledge available to Plaintiff and the circumstances at the time.

52. Defendants further represented that the hotel's UPONOR PEX piping was failing because the temperature for the hotel's plumbing system exceeded the products maximum operating temperature of 140 degrees Fahrenheit.

53. This representation was false as Defendants knew Plaintiff's hot water system could not exceed 140 degrees Fahrenheit.

54. Defendants intended for the above-described representations to avoid its duties to honor its warranty.

55. Defendant has a pattern and practice of failing to honor its warranty.

56. As a direct and proximate result of the above-described misrepresentations made by Defendants, Plaintiff has suffered direct and consequential damages as set forth in the above Statement of Facts.

### COUNT TWO - SUPPRESSION

57. Plaintiff realleges, as if fully set forth, each and every allegation contained in the preceding paragraphs, and further alleges that:

58. UPONOR had a duty to inform Plaintiff of the defects set forth above. Specifically, UPONOR has known, or should have known, of the problems and defects outlined herein through various complaint forums (including, without limitation, its own warranty program) and as a result of claims being filed against UPONOR by insurance companies related to the defects. Notwithstanding its duty to inform Plaintiff, UPONOR has never disclosed the defects to Plaintiff. To the contrary, UPONOR consistently represented that consumers should trust Defendants to provide the highest quality PEX tubing because the company has many years of industry experience and its status as an industry leader in the manufacture of PEX tubing. Defendants designed, manufactured, advertised/marketed, distributed, and/or sold the UPONOR PEX at issue. Defendants' sales catalog advertised that, inter alia, its UPONOR PEX was the highest quality PEX tubing available, and that its cross-chemical bonding process gave it "superior characteristics."

59. Defendants suppressed and concealed this information from Plaintiff.

60. Defendants had a duty to disclose to Plaintiff the material facts set forth above under the circumstances.

61. Defendants had superior knowledge of the facts and had a means of knowledge and expertise not shared by Plaintiff and, therefore, Defendants had a duty to disclose to Plaintiff the material facts set forth above.

62. Defendants suppressed and concealed material facts from Plaintiff in order to induce it and others to utilize their products. Without knowledge of the foregoing material facts, Plaintiff acted to its injury.

63. As a direct and proximate result of the above-described actions or inactions of Defendants, Plaintiff has suffered direct and consequential damages as set forth in the above Statement of Facts.

## COUNT THREE - BREACH OF EXPRESS WARRANTY

64. Plaintiff realleges, as if fully set forth, each and every allegation contained in the preceding paragraphs, and further alleges that:

65. By contract and operation of law, Defendants expressly warranted the UPONOR PEX piping utilized in Plaintiff's hotel for a period of twenty-five years.

66. Plaintiff discovered that the PEX piping utilized in its hotel was failing only one (1) year after it was installed, and notified UPONOR within three (3) years of the 25-year warranty period.

67. UPONOR denied Plaintiff's warranty claim based upon its own inspection which they claim that the temperature had been set too high for the hot water plumbing system, which was patently false.

68. Despite being notified of Plaintiff's warranty claim within the warranty period, UPONOR denied Plaintiff's warranty claim without justification.

69. Defendants breached the warranties to Plaintiffs by failing to design, manufacture, market and distribute a product free of defects. As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages as set forth in the above Statement of Facts.

**COUNT FOUR - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

70. Plaintiff realleges, as if fully set forth, each and every allegation contained in the preceding paragraphs, and further alleges that:

64. At all relevant times herein, Defendants manufactured and/or supplied the UPONOR PEX, and prior to the time the UPONOR PEX was put into the hotel owned by Plaintiff, Defendants impliedly warranted that UPONOR PEX was of merchantable quality and fit for the ordinary use for which it was intended.

65. The UPONOR PEX was unfit for its intended use and was not of merchantable quality because of the defects in the UPONOR PEX alleged herein.

66. Defendants breached the implied warranty of merchantability, as the UPONOR PEX was not of a merchantable quality due to the defects alleged herein. As a direct and proximate result of Defendants' breach of said implied warranties, Plaintiff has suffered, and will continue to suffer, damages as alleged herein in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment, joint and several where appropriate, be entered against Defendants, including Fictitious Defendants, in an amount to be determined by the trier of fact, and for further exemplary damages to the extent permitted by law. Plaintiff also demands the costs of this action, attorneys' fees, expenses, and interest on the judgment as allowed by law.

Dated: March 11, 2022

**PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY**

                                      s/Ethan D. Hiatt
                                      Ethan D. Hiatt (HIA001)
                                      Attorney for Plaintiff

                                      s/H. Arthur Edge, III
                                      H. Arthur Edge, III (EDG004)
                                      Attorney for Plaintiff

**OF COUNSEL:**
H. ARTHUR EDGE, P.C.
2320 Highland Avenue, Suite 175
Birmingham, Alabama 35205
(205) 453-0322
(205) 453-0326 (fax)
ethan@edgelawyers.com
art@edgelawyers.com

**CERTIFICATE OF SERVICE**

     I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record on this the 15th day of March 2022.

                                      /s/ Ethan D. Hiatt
                                      OF COUNSEL