FILED
2022 Apr-11 PM 06:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRCT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **KW-TUSCALOOSA HOTEL PARTNERS, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NUMBER: 7:22-cv-00005-GMB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UPONOR INC.; UPONOR NORTH AMERICA;** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT UPONOR, INC.'S MOTION TO DISMISS**

COMES NOW KW-Tuscaloosa Hotel Partners, LLC (hereinafter "Plaintiff") and pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, respectfully requests this Court to *deny* Defendant Uponor, Inc.'s (hereinafter "Uponor") Motion to Dismiss. As grounds for this motion, Plaintiff states the following:

## I. INTRODUCTION

1. Plaintiff filed its Complaint on January 3, 2022. [Doc. 1.]

2. On March 2, 2022, Uponor filed a "Motion to Dismiss or For More Definite Statement." [Doc. 9.]

3. On March 15, 2022, Plaintiff filed its First Amended Complaint. [Doc. 17.] Following the filing of Plaintiff's Amended Complaint on March 16, 2022, Magistrate Judge Gray M. Borden issued a Text Order ruling that the Amended Complaint renders Uponor's motion to dismiss as MOOT.

4. On March 28, 2022, Uponor filed its second "Motion to Dismiss or For More Definite Statement." [Doc. 21.]

5. To support its Motion, Uponor filed a "Memorandum of Law in Support of Motion to Dismiss" wherein it argues numerous applications of Alabama law to Plaintiff's claims. [Doc. 10.]

6. Uponor's Motion to Dismiss is due to be denied as it has willfully ignored its own choice of law provision in the Limited Warranty.

7. Indeed, Exhibit "A" to Uponor's Motion to Dismiss contains the Warranty Agreement at issue between the parties. The Warranty states, in pertinent part:

> **Miscellaneous:**
>
> By the mutual agreement of the parties, it is expressly agreed that this limited warranty and any claims arising from breach of contract, breach of warranty, tort, or any other claim arising from the sale or use of Uponor's products **shall be governed and construed under the laws of the State of Minnesota.**

[Uponor's Exhibit A (Limited Warranty).] [Emphasis added.]

8. Such a clause is "[a] contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the parties." *Black's Law Dictionary* 304 (11th ed. 2019). The law of Alabama "has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991). *Ex parte Venture Express, Inc.*, No. 1200351, 2021 WL 1826995, at *1 (Ala. May 7, 2021).

9. Accordingly, Plaintiff's claims are unquestionably governed under the laws of Minnesota, and Uponor's Motion is due to be denied as it has failed to adhere to its own choice of law provision by arguing for the application of Alabama law.

10. To the extent Uponor's Motion argues that Plaintiff's claims are not timely or pled in accordance with the *Federal Rules of Civil Procedure*, Plaintiff shows unto the Court the following:

## II. STANDARD OF REVIEW

Motions to Dismiss for Failure to State a Claim under Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. *Hamm v. Groose*, 15 F. 3d 110, 112 (8th Cir. 1994); *Ossman v. Diana Corp.*, 825 F.Supp. 870, 879–80 (D.Minn.1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. *Ossman*, 825 F.Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949 (2009).

Determining whether a complaint states a plausible claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. "But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged —but not 'shown'—'that the pleader is entitled to relief.' " *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

## III. ARGUMENT

### I. Plaintiff's Fraud and Suppression Claims are Timely.

Minn. Stat. Ann. § 541.05 states: "The following actions shall be commenced within six years:

. . .

> (6) for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud[.]"

As such, the statute of limitations for Plaintiff's fraud and suppression claims under Minnesota law is six (6) years. Moreover, when discovery of fraud should have reasonably occurred is a question of fact. "The six-year limitations period begins to run when a plaintiff knew or should have known of the fraud. *See Estate of Jones v. Kvamme*, 449 N.W.2d 428, 431 (Minn. 1989). The question of when discovery could or should have reasonably been made is one of fact. *Id.* The plaintiff bears the burden of proving that she could not, through reasonable diligence, have discovered the facts constituting the fraud until within six years of the commencement of the action. *Blegen v. Monarch Life Ins. Co.*, 365 N.W.2d 356, 357 (Minn.Ct.App.1985)." *Barry v. Barry*, 78 F.3d 375, 379–80 (8th Cir. 1996).

Similarly, another element of fraud, proximate cause, is a fact question for a jury**.** **"**Under Minnesota law, proximate cause is generally a separate factual issue to be resolved by a jury. *See McCormick v. Custom Pools, Inc.*, 376 N.W.2d 471, 475 (Minn.Ct.App.1985) ("Issues of negligence and proximate cause are seldom matters capable of determination on a summary judgment motion"). Proximate cause exists if the

defendant's conduct, without intervening or superseding events, was a substantial factor in creating the harm. *See Flom v. Flom*, 291 N.W.2d 914, 917 (Minn.1980)." *Thompson v. Hirano Tecseed Co.*, 456 F.3d 805, 812 (8th Cir. 2006).

Turning to Plaintiff's Amended Complaint, Plaintiff alleges that it discovered a leak in the PEX piping for the first time in the Spring of 2016[1]. [See First Amended Complaint (Doc. 10.) ¶24.] This 2016 leak was localized to only one area of the hotel and, at the time, did not alert Plaintiff that there was an issue with the pipe as a whole. *Id.* While Plaintiff contends that it would not be reasonable that a single leak in the Spring of 2016 would place Plaintiff on notice of fraud, even this leak (the **earliest** possible date Defendant can point to) is within the six-year statute of limitations.[2]

Plaintiff maintains that the six-year limitations period began to run when Uponor representatives informed Plaintiff via denial letter in February 2018 that the problems with the PEX was the result of the temperature for the hot water side of the plumbing system being set to 160 degrees Fahrenheit. [See First Amended Complaint (Doc. 10.) ¶28.] This also is undoubtedly within the six-year limitations period. Regardless, the question of when discovery could or should have reasonably been made is one of fact and, therefore, Uponor's Motion is due to be denied.

**II. Plaintiffs' Fraud and Suppression Claims are Properly Pled.**

Plaintiff filed its First Amended Complaint on March 15, 2022. Therein, Plaintiff included additional facts satisfying the special pleading requirement set forth in Rule 9(b), *Fed. R. Civ. P.* ("FRCP"). Rule 9(b) states that "[i]n alleging fraud or mistake, a

[1] Plaintiff specifically pled "Spring of 2016" as it cannot recall the exact date of the first leak; however, knows it took place during the Spring months – March, April, May.

[2] Plaintiff filed its Complaint on January 3, 2022.

party must state with particularity the circumstances constituting fraud or mistake." FRCP 9(b). Pursuant to Rule 9(b), each plaintiff must allege the following: "(1) the precise statements, documents, or misrepresentation made; (2) the time, place, person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *ADA v. Cigna Corp*., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Plaintiff's First Amended Complaint offers more than "generalized or conclusory statements." Therein, Plaintiff provides the following factual predicate for its fraud claims:

> UPONOR warrants that its PEX Tubing will be free from any defects in materials and workmanship for a period ranging from ten (10) years to twenty-five (25) years, dependent upon whether the entire plumbing system was composed of solely of UPONOR products, or instead, UPONOR components installed in conjunction with other manufacturers' PEX products. The industry and consumers appropriately rely on the marketing language to mean a product with a 10-year, or 25-year warranty is expected to have a usable lifetime of at least 10 years or 25 years, respectively. [Ex. A (First Amended Complaint) ¶11.]
>
> Defendants have repeatedly represented to consumers that they should trust Defendants to provide the highest quality PEX tubing because the company has many years of industry experience and its status as an industry leader in the manufacture of PEX tubing. Defendants designed, manufactured, advertised/marketed, distributed, and/or sold the UPONOR PEX at issue. [*Id.* at 44.]
>
> Defendants' sales catalog represented that, inter alia, its UPONOR PEX was the highest quality PEX tubing available, and that its cross-chemical bonding process gave it "superior characteristics." Defendants further represented that the UPONOR PEX products at issue were "versatile" and suitable for "Potable Hot- and Cold-water Distribution" and hot/cold water recirculation plumbing systems. Defendants further represented that their UPONOR PEX piping held a 5106 material designation code – the classification for the highest "chlorine resistance". [*Id.* at 45.]

> All of these representations were false. [*Id.* at 46.]
> Defendants intended for the above-described representations to induce Plaintiff and others to utilize their PEX Products. [*Id.* at 47.]
>
> Defendants intended for the above-described representations to induce Plaintiff to utilize UPONOR's PEX Products in its hotel's plumbing system. [*Id.* at 48.]
>
> Defendants' misrepresentations were made either willfully to deceive, recklessly without knowledge, or by mistake and innocently. [*Id.* at 49.]
>
> Plaintiff acted in reliance on Defendants' misrepresentations by agreeing to purchase the Uponor Pex Products, which it would not have done had it known the truth. [*Id.* at 50.]
>
> Plaintiff's reliance was reasonable and justified based on the knowledge available to Plaintiff and the circumstances at the time. [*Id.* at 51.]
>
> Defendants further represented that the hotel's UPONOR PEX piping was failing because the temperature for the hotel's plumbing system exceeded the products maximum operating temperature of 140 degrees Fahrenheit. [*Id.* at 52.]
>
> This representation was false as Defendants knew Plaintiff's hot water system could not exceed 140 degrees Fahrenheit. [*Id.* at 53.]
>
> Defendants intended for the above-described representations to avoid its duties to honor its warranty. [*Id.* at 54.]
>
> Defendant has a pattern and practice of failing to honor its warranty. [*Id.* at 55.]
>
> As a direct and proximate result of the above-described misrepresentations made by Defendants, Plaintiff has suffered direct and consequential damages as set forth in the above Statement of Facts. [*Id.* at 56.]

The "precise statements, documents, or misrepresentation made" are (1) that its PEX Tubing will be free from any defects in materials and workmanship for a period ranging from ten (10) years to twenty-five (25); (2) that consumers like Plaintiff should trust Defendants to provide the highest quality PEX tubing because the company has many years of industry experience and its status as an industry leader in the manufacture

of PEX tubing; (3) Defendants' sales catalog represented that, inter alia, its UPONOR PEX was the highest quality PEX tubing available, and that its cross-chemical bonding process gave it "superior characteristics." Defendants further represented that the UPONOR PEX products at issue were "versatile" and suitable for "Potable Hot and Cold-water Distribution" and hot/cold water recirculation plumbing systems. Defendants further represented that their UPONOR PEX piping held a 5106-material designation code – the classification for the highest "chlorine resistance"; and (4) Defendants further represented that the hotel's UPONOR PEX piping was failing because the temperature for the hotel's plumbing system exceeded the products maximum operating temperature of 140 degrees Fahrenheit.

The "**time**" of the alleged misrepresentations is clearly stated as at the time it made said statements to Plaintiff at each denial of Plaintiff's warranty claims. Uponor also made misrepresentations in its warranty and in its sales catalog. Moreover, additional misrepresentations were made via Defendants' warranty claim letter on January 27, 2021. *Id.* at 31.

The "**place**" where the misrepresentations occurred is named in the First Amended Complaint is in Uponor's sales catalog, in Uponor's warranty and in Uponor's denial letter dated January 27, 2021. *Id.* at ¶ 11, 13, 31.

The "**person responsible**" is clearly Uponor.

The "**content and manner in which these statements misled the Plaintiff**" is that Plaintiff acted in reliance on Uponor's misrepresentations by agreeing to purchase the Uponor Pex Products and have them installed in the hotel, which it would not have done had it known the truth. *Id.* at 50.

And finally, "**<u>what the defendants gained by the alleged fraud</u>**" is saving significant time and money denying Plaintiff's claim(s).

In *McGregor v. Uponor, Inc.*, a Minnesota District Court held that pleadings regarding fraud nearly identical to those set forth by this Plaintiff in its amended complaint were sufficient to properly plead fraud against Uponor under Rule 9(b). No. CIV 09-1136 ADM/JJK, 2010 WL 55985, at *4 (D. Minn. Jan. 4, 2010). The Court explained that "a complaint need not be filled with precise detail to satisfy Rule 9(b); a main purpose of the rule is to 'facilitate a defendant's ability to respond and to prepare a defense to charges of fraud.'" *Id*. at *3 (citation omitted). Thus, the Court explained, "Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the 'core' factual basis for the fraud claims." *Id*. Thus, Uponor's Motion to Dismiss is due to be denied.

## III. Plaintiff has Adequately Pled the Basis for a "Duty" of Disclosure by Uponor to Plaintiff.

The Court in *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, explained:

> Under the common law, one party to a transaction has no duty to disclose material facts to the other party. But in *Klein* [*v. First Edina Nat'l Bank*, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972)], we recognized that special circumstances may trigger a duty to disclose material facts and gave three examples of such special circumstances. First, a person who has a confidential or fiduciary relationship with the other party to the transaction must disclose material facts. Second, one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose those facts to the other party. Third, a person who speaks must say enough to prevent the words communicated from misleading the other party. The examples in *Klein* are not intended to be exclusive.

850 N.W.2d 682, 695 (Minn. 2014) (internal citations omitted).

Here, the first exception would admittedly not apply because there was no confidential or fiduciary relationship between Plaintiff and Uponor. However, the second and third exceptions do apply. As the manufacturer of the Uponor Pex products, Uponor certainly had "special knowledge of material facts" regarding its products that the Plaintiff did not have access to, thereby potentially creating a duty to disclose those facts. As to the third exception, Plaintiff has alleged in its First Amended Complaint that Uponor lied to Plaintiff about the cause of the pipe failure as Plaintiff's plumbing system has never, during its entire operating history, been set at or higher than 140 degrees Fahrenheit. [*See* First Amended Complaint (Doc. 10.) ¶34.] This misrepresentation alone created a duty under Minnesota law. *Jane Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 686 (Minn. Ct. App. 2010) ("A misrepresentation may be made by an affirmative statement that is itself false or by concealing or not disclosing certain facts that render facts disclosed misleading." (citing *Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn. 2002)).

Further, "[t]hough one may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, *he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all, he must make a full and fair disclosure." Simonsen v. BTH Properties*, 410 N.W.2d 458, 461 (Minn. Ct. App. 1987) (citing *Swedeen v. Swedeen*, 270 Minn. 491, 498, 134 N.W.2d 871, 877 (1965)). As such, Plaintiff has properly pled the basis for a duty of disclosure between itself and Plaintiff.

Based on the foregoing, Plaintiff's fraud and suppression claims as alleged in the First Amended Complaint fully comply with the special pleading requirements set forth in *Fed. R. Civ. P.* Rule 9(b). Plaintiff's claims clearly provide fair notice to Uponor of the acts complained of and inform Uponor of the incident(s) from which the fraud is alleged to have occurred. Accordingly, Defendant Uponor's motion to dismiss Plaintiff's fraud claims is due to be denied.

## IV. Whether Plaintiff Sufficiently Gave Notice of its Breach of Express Warranty Claim is a Jury Question.

First, under Minnesota law, whether or not contractual or statutory notice provisions have been satisfied is a jury question. *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1070–71 (D. Minn. 2013) ("Minnesota courts have held sufficiency of the notice requirement for a breach of warranty claim 'is a jury question.'" (quoting *Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 5 (Minn. 1992), *overruled on other grounds by Ly v. Nystrom*, 615 N.W.2d 302 (Minn. 2000))). Second, and more importantly, absolutely nothing in Uponor's Warranty states that failing to submit notice of a warranty claim within thirty (30) days is a bar to later filing suit. The Warranty specifically provides:

> **Warranty Claim Process (for building owners and homeowners only):** Written notification of an alleged failure of, or defect in, any Uponor part or product identified herein should be sent to [the listed address or facsimile number], and must be received by Uponor within thirty (30) days after detection of an alleged failure or defect occurring within the applicable warranty period. All products alleged to be defective must be sent to Uponor for inspection and testing for determination of the cause of the alleged failure or defect.

[Doc. 10-1 p. 3.]

Minnesota courts may enforce contractual notice provisions only if they specifically provide that such notice is a “condition precedent” to bringing a claim and failure to give timely contractual notice will result in waiver of legal rights. *See, e.g.*, *Cameo Homes v. Kraus-Anderson Const. Co.*, 394 F.3d 1084, 1085-87 (8th Cir. 2005) (finding failure to follow notice provision dispositive where the provision specifically provided that it was a “condition precedent” to bringing a breach of contract claim and the failure to do so would “preclude later litigation”); *Marshall Mill. Co. v. Hintz-Cameron Co.*, 156 Minn. 301, 306, 194 N.W. 772, 774 (1923) (enforcing 30 day notice provision where the contract specifically stated that “retaining any part of a shipment for more than thirty days after receiving it ‘without reporting defect, breach or default’ to the seller before the expiration of such thirty days shall constitute an acceptance of such shipment; **and that acceptance of goods shall estop the buyer from claiming breach of warranty, defect in quality, or other breach or default as to such goods**.” (emphasis added)).

Here, however, the Warranty does not provide that the failure to follow the 30-day notice protocol will result in waiver of the legal right to file a lawsuit based upon that warranty claim. *Id*. Nor does it provide that providing such notice is a “condition precedent” to later litigation of that claim. *Id*. In fact, the Uponor Warranty provides a dispute resolution process to follow in the event the parties are “unable to resolve a claim through informal means”. *Id*.

Moreover, the Uniform Commercial Code as adopted by Minnesota states that where tender has been accepted, “the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred

from any remedy." Minn.Stat. § 336.2–607(3)(a) (1965). We have held that the notice which satisfies this section need only be such that informs the seller that the transaction is troublesome and needs to be watched. *Lewis v. Mobil Oil Corp.,* 438 F.2d 500 (8th Cir.1971); *see also Speakman Co. v. Harper Buffing Machine Co., Inc.*, 583 F.Supp. 273 (D.Del.1984); *Royal Typewriter Company v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir.1983); *Alafoss v. Premium Corporation of America*, 599 F.2d 232, 235 n. 5 (8th Cir.1979). *N. States Power Co. v. ITT Meyer Indus., Div. of ITT Grinnell Corp.*, 777 F.2d 405, 408–09 (8th Cir. 1985).

Here, Plaintiff gave Uponor notice three (3) separate times. First, plaintiff submitted its first warranty claim in November of 2017, after additional leaks continued after the Spring of 2016. [See First Amended Complaint (Doc. 10.) ¶26.] Having received no response from the first warranty claims, Dan Jones, the project engineer, contacted Defendant UPONOR to file a warranty claim regarding the problems they were experiencing for the second time in February of 2018. [See First Amended Complaint (Doc. 10.) ¶27.] Part of this warranty claim **included sending portions of the defective pipe to UPONOR.** *Id.* [Emphasis added.] Plaintiff continued to experience leaks throughout the hotel in the hallways, kitchen and restaurant. In July of 2020, Plaintiff submitted a third warranty claim to UPONOR through a third-party manufacturers' firm, Pully & Associates. [See First Amended Complaint (Doc. 10.) ¶29.]

Consequently, Uponor's arguments that (1) Plaintiff fails to adequately plead an Express Warranty Claim; and (2) Plaintiff has not alleged the pre-conditions for any alleged breached are due to be disregarded under applicable Minnesota law.

### V. None of Plaintiff's Damages are Barred By the Express Warranty as it Failed its Essential Purpose.

Under Minnesota law, "[a]n exclusive remedy fails of its essential purpose if circumstances arise to deprive the limiting clause of its meaning or one party of the substantial value of its bargain." *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 356 (Minn. 1977) (*Durfee)* (citing Minn. Stat. Ann. § 336.2–719, U.C.C. Comment 1). A repair or replace clause does not fail of its essential purpose **so long as repairs are made each time a defect arises**. *Durfee*, 262 N.W.2d at 356 (emphasis added). Uponor's Limited Warranty states the following:

> Subject to the terms and conditions of this Limited Warranty, Uponor, Inc. ("Uponor") warrants to the owner of the applicable real property that the Uponor products listed below shall be free from defects in materials and workmanship, under normal conditions of use when installed as part of a potable water distribution system.
>
> Unless otherwise specified, this Limited Warranty for the applicable Uponor products shall commence on the date the product was installed ("Commencement Date") and will expire after the following number of years:
>
> (a) Twenty-Five (25) years for Uponor AquaPEX-a® tubing, Uponor ProPEX® fittings and ProPEX® rings when all are installed in combination with each other;
>
> (b) Ten (10) years for Uponor AquaPEX-a® tubing when installed in combination with non-Uponor fittings;
>
> (c) Ten (10) years for Uponor EP valves, EP valveless manifolds and Uponor tub ells, stub ells, and straight stubs;
>
> (d) Two (2) years for Uponor metal manifolds, Uponor EP manifolds with valves;
>
> (e) Five (5) years for the Uponor D'MAND® system;
>
> (f) Two (2) years for all other components of the Uponor ProPEX® fitting system and all other plumbing items listed in Uponor's catalog as of the effective date of this limited warranty.

[Exhibit A (Limited Warranty).]

The warranty given by Uponor clearly states that the Uponor products installed in Plaintiff's hotel "shall be free from defects in materials and workmanship." As stated *Supra*, Here, Plaintiff gave Uponor notice three (3) separate times that its pipe was failing. Uponor have been on notice of failing pipe at Plaintiff's hotel since 2017, and has been unable or unwilling to properly repair and/or replace the defective pipes. Uponor now denies any responsibility for its defective pipes. As such, the limited remedy chosen by Uponor has failed in its essential purpose and, accordingly, the Motion to Dismiss is due to be denied.

## CONCLUSION

Motions to dismiss should be granted sparingly, and a dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. Here, Defendant has failed to prove to this Court that Plaintiff's claims are due to be dismissed pursuant to Rule 12(b)(6) for lack of particularity. Accordingly, Uponor's Motion is due to be denied as a matter of law. Upon consideration of the premises set forth above, Plaintiff respectfully requests that this Honorable Court enter an order denying the Uponor's Motion to Dismiss.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the Court to *deny* Defendant Uponor, Inc.'s Motion to Dismiss.

Dated April 11, 2022

Ethan D. Hiatt
Ethan D. Hiatt (asb-3425-a46z)
Attorney for Plaintiff

s/ H. Arthur Edge, III
H. Arthur Edge, III (asb-8927-d64h)
Attorney for Plaintiff

**OF COUNSEL:**
H. ARTHUR EDGE, P.C.
2320 Highland Ave. S., Suite 175
Birmingham, Alabama 35205
(205) 453-0322
(205) 453-0326 (fax)
E-mail: art@edgelawyers.com
ethan@edgelawyers.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record on this the 11th day of April 2022.

Gregory S. Ritchey, Esquire
RITCHEY LAW FIRM, PLLC
Founders Trust Center
1740 Oxmoor Road, Suite 100
gsritchey@ritcheylaw.com

/s/ Ethan D. Hiatt
OF COUNSEL